THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ALBERT BLUMENTHAL, Respondent.

First Department, December 12, 1976

*T. James Bryan* of counsel *(Howard Wilson* with him on the brief; *Charles J. Hynes, Deputy Attorney-General)*, for appellant.

*Angelo T. Cometa* of counsel *(Louis Nizer* and *David G. Richenthal* with him on the brief; *Phillips, Nizer, Benjamin, Krim & Ballon,* attorneys), for respondent.

KUPFERMAN, J.   While we affirm the determination granting the defendant's motion to dismiss this 12-count superseding indictment, and the Justice at Trial Term has in an extensive opinion reviewed the matter in great detail, we set forth our own analysis, more briefly, because we differ to some extent in our approach to the problem.

The initial indictment contained eight counts of perjury in the first degree. The superseding indictment added a further perjury count and three substantive counts. The substantive counts are: (1) a violation of section 77 of the Public Officers Law concerning "Unlawful fees and payments", here relevant because the defendant was a "member of the legislature"; (2) a violation of section 200.25 of the Penal Law, receiving reward for official misconduct in the second degree; and (3) a violation of section 200.35 of the Penal Law, receiving unlawful gratuities. They sum up in the context of this matter as to whether the defendant was engaged in official misconduct and had the *power* to achieve a result and received a *promise* as consideration to achieve it.

There is no doubt that the defendant assisted Bernard Bergman in convincing the New York State Department of Health to license Bernard Bergman to operate the Park Crescent Nursing Home located in the defendant's Manhattan West Side Assembly District. However, he did not receive or demand any unlawful emolument or promise of compensation for this. While the People point to the fact that Bergman, after the licensure, by letter acknowledged a commitment to the defendant for a minority training program at the Home, it was not a concurrence in the employment of the group, Training and Development Corporation (TDC), with which defendant had an attorney-client relationship, but for such a program in general, and, indeed, Bergman suggested someone else to run the program. Moreover, the fact that, by virtue of its eventual employment by Bergman at the Park Crescent Nursing Home, TDC was able to pay to the defendant's law firm a past due and current fee of a total of approximately $4,000* for professional services covering two years of work including non-Bergman related matters as well, does not bolster the charge. TDC being a legitimate organization and not a conduit for any cover-up, was an intervening factor so that a benefit to it was not one to the defendant. His service to bring to the community a minority training program was a justifiable activity for a public servant.

While we find no promise or unlawful reward to the defendant, it cannot be gainsaid (although some of us differ, cf. *State v Bowling,* 5 Ariz App 436) that he had the power to help achieve the result. He was the Deputy Minority Leader of the New York State Assembly and a former Chairman of its Health Committee. (See *People v Chapman,* 13 NY2d 97; *People v Lafaro,* 250 NY 336; *People v Clougher,* 246 NY 106; *People v Jackson,* 191 NY 293.)

The substantive counts out of the way, we proceed to the nine perjury counts. We initially agree that "the existence of mistake, fallibility of memory or materiality can only be determined by the triers of the facts" *(People v Dunleavy,* 41 AD2d 717, affd without opn 33 NY2d 573. See, also, *People v Sabella,* 35 NY2d 158).

Counts 4 to 9 charge false statements before the Special Grand Jury, and counts 10 to 12 charge false statements before the Temporary State Commission on Living Costs and

*The defendant's personal share was only a small portion thereof.

the Economy (Stein Commission), a legislative body. Of course, the charges overlap, the statements before the Stein Commission being essentially the same as those before the Grand Jury.

However, with respect to the Stein Commission perjury charges, the jurisdiction of the Special Prosecutor (Charles J. Hynes, Deputy Attorney-General) comes into question. The power of the Special Prosecutor stems from subdivision 3 of section 63 of the Executive Law, and the District Attorney of New York County has not been superseded. Under the authority of *Matter of Dondi v Jones* (40 NY2d 8) this is not a matter for the Special Prosecutor. Those counts, 10, 11 and 12, were properly dismissed. (See *People v Di Falco,* 54 AD2d 218; CPL 210.20, subd 4.) Nonetheless, we have considered those three counts in connection with their companion counts of perjury before the Grand Jury.

Counts 4 to 9 regarding statements before the Grand Jury fall into basically four categories.

Count 4 charges perjury in connection with statements concerning receiving a "promise". Inasmuch as we have found no such violation, that count was properly dismissed.

Count 5 (and Stein counts 10 and in part 11) have to do with the defendant's statement that he understood at the time, that the Bergman problem in not receiving a license for the Towers Nursing Home was primarily structural compliance and not poor patient care and other operating deficiencies (character and competence). What the defendant's understanding was is an operation of the mind. (See *People v Rinaldi,* 34 NY2d 843.) That count was properly dismissed.

Counts 6 (and 8 and 9) have to do with whether the defendant ever had a meeting at the Department of Health when Bergman was not present. It was defendant's contention that he did not by himself attend these meetings.

Count 7 (and Stein count 11 in part, and 12) have to do with whether the defendant lied when he denied telling anyone at a meeting that he had visited the Towers Nursing Home. This home was a trouble spot and one of the reasons the Department of Health was holding up the Park Crescent license. The charge also contemplated that he vouched for the condition of the Towers Home based on this alleged visit. The Stein count 11 in part charges perjury in that defendant said that he did not "vouch" for the Towers Nursing Home whereas, it is

alleged, that in truth he did "vouch" for that home. Whether particular statements constitute "vouching" for someone or something obviously is a matter of interpretation both of the statements and of the meaning of the word "vouch".

Counts 6 and 7 (and related counts) come closest to being statements of fact and whether true or false, raise the question of whether those perjury counts should go to trial. However, at this point we consider the underlying question of whether without substantive counts, and with the surrounding counts dismissed, it accomplishes any step forward for justice to subject the defendant at this time to a perjury trial on a negligible aspect of the charges. (Cf. *Bronston v United States,* 409 US 352.)

The order entered April 13, 1976 (MELIA, J.) should be affirmed on the law and in the interest of justice.

MARKEWICH, J. P., SILVERMAN, CAPOZZOLI and LANE, JJ., concur.

Order, Supreme Court, New York County, entered on April 13, 1976, unanimously affirmed, on the law and in the interest of justice.

